IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Clarence E. Crittendon, | ) | Case No. 8:15-cv-01888-RMG-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Leroy Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 13.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on April 30, 2015.[1]  [Doc. 1.] On August 5, 2015, Respondent filed a motion for summary judgment and a return and memorandum.  [Docs. 13, 14.]  On the same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 15.]  Petitioner filed a response in opposition on October 23, 2015. [Doc. 28.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on April 30, 2015.  [Doc. 1-2 at 3 (envelope marked as received by prison mailroom on April 30, 2015).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

Petitioner is incarcerated in the McCormick Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Oconee County. [Doc. 1 at 1.] Petitioner was indicted in March 2004 for lewd act upon a child under sixteen and criminal sexual conduct-first degree; in July 2006, Petitioner was re-indicted for criminal sexual conduct with a minor-first degree. [App. 343–48.[2]] On December 11–12, 2006, represented by Bruce Byrholdt ("Byrholdt"), Petitioner proceeded to trial. [App. 1–272.] At the conclusion of the trial, the jury returned a verdict of guilty on both charges. [App. 172.] Petitioner was sentenced to 15 years imprisonment on the charge of lewd act on a minor under sixteen and 30 years for the charge of criminal sexual conduct with a minor-first degree, to run concurrent. [App. 179–80; Doc. 1 at 1.]

**Direct Appeal**

Petitioner appealed his conviction. Katherine H. Hudgins ("Hudgins") of the South Carolina Commission on Indigent Defense filed an *Anders*[3] brief on Petitioner's behalf, dated February 14, 2008, in the South Carolina Court of Appeals, raising the following issue:

> Did the judge err in failing to grant a mistrial when, in closing argument, the prosecutor made the comment that the defense has shown you what I like to call a smoke and mirrors

---

[2]The Appendix can be found at Docket Entry Number 14-1.

[3]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

2

act because the comment constituted an improper comment on
the defendant's right to remain silent?

[Doc. 14-5 at 4.] At the same time, Hudgins filed a petition to be relieved as counsel. [*Id.* at 8.] Petitioner filed an affidavit, dated September 22, 2008, stating that he wanted to dismiss the appeal and waived any issues that had been raised. [Doc. 14-10 at 2.] The South Carolina Court of Appeals issued an order of dismissal and remittitur on October 6, 2008. [Doc. 14-11.]

**PCR Proceedings**

### *First PCR Application*

On December 17, 2008, Petitioner filed a pro se application for post-conviction relief ("PCR"), in which he alleged he was being held in custody unlawfully based on the following grounds:

> (a)    Ineffective assistance of Trial Counsel,
>
> (b)    Prosecutorial Misconduct, Harassment and Vindictive prosecution,
>
> (c)    Subject Matter Jurisdiction.

[Doc. 14-12.] As supporting facts for his grounds, Petitioner submitted an attachment, quoted substantially verbatim:

> A.) Trial Counsel failed to call in to question the sufficiency of the Direct Reindictment befor Jury was sweared in.
>
> Trial Counsel failed to investigate clients claim of assertion of Speedy Trial right and make motion to court for STA to be ruled upon.
>
> Trial Counsel failed to do pre-trial Investigation into Client's Claim of being set up. Failed to depose of the two remaining fact witnesses whos testimony would of bolstered petitioner's claims of being set up.

3

Because case was a credibility contest, Counsel failed to employ a medical expert for defense to explain that medical exame found no evidence of abuse.

Failed to object to prosecutor's improper comments in closing argument that alluded to defendant not testifying or presenting a case.

Failed to advise client that the lesser included offense of ABHAN could have been requested of the court by petitioner to be charged to jury.

B.) Prosecutor never notified petitioner of intent to dismiss original indictment. Prosecutor had original indictment dismissed on the pretense of good faith in order to make way to reindict with indictment that coinsided with prosecutor's evidence.

Prosecutor made improper comments during closing argument alluding to petitioner not testifying or presenting a case.

C.) After being True billed by the Grand Jury of Oconee County and being signed by Grand Jury forman, indictment no. # 2004-GS-37-509 was not, as due process dictates, submitted for clock stamp and date to Clerk of Court as to be placed on court docket.

[*Id.*] The State filed a return, dated March 31, 2009.[4] [App. 197–201.]

A hearing was held on October 3, 2011, at which Petitioner was represented by R. Mills Ariail, Jr. ("Ariail"). [App. 204–41.] The PCR court filed an order denying and dismissing the PCR application with prejudice on January 17, 2012. [App. 270–85.]

### Second PCR Application

On October 10, 2012, Petitioner filed a second pro se PCR application, in which he alleged he was being held in custody unlawfully based on the following grounds:

---

[4]Included in the exhibits is an Amendment to Post Conviction Relief, signed by Petitioner on May 21, 2009, alleging "trial counsel [was] ineffective for failing to object to solicitor's vouching of State's witness." [App. 243–52.]

> (a)   Post conviction relief attorney failed to file appeal from post conviction relief hearing

[App. 287.]  As supporting facts for his ground, Petitioner provided:

> (a)   PCR attorney failed to file appeal to SC Supreme Court as directed by Applicant

[App. 288.]  Petitioner attached a brief further explaining that he informed Ariail that he was to file a Rule 59(e) motion and then an appeal if the first PCR application was denied. [App. 294–95.]  Petitioner stated that he was seeking to file a belated appeal to the Supreme Court of South Carolina and a Rule 59(e) motion.  [App. 296.]  It appears Petitioner also filed an attachment with his second PCR application reiterating the grounds raised in his first PCR application.  [App. 306–07.]  The State filed a partial return and motion to dismiss.  [App. 308–13.]  On January 14, 2013, Petitioner, represented by Rodney Richey ("Richey"), filed an "amendment to post conviction relief applications," alleging the following, quoted substantially verbatim:

> The applicant hereby amends answers to number 9 and number 10 of his Application for Post-Conviction Relief to state the following:
>
> 9.   State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> (A)   The Applicant was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 14 of The South Carolina Constitution.
>
> 10.   State concisely and in the same order the facts which support each of the grounds set out in (9):
>
> (a)   The applicant was provided with deficient representation by his attorney, in that the conduct of his attorney was objectively unreasonable under the circumstances.

5

<u>Strickland v. Washington</u>. 466 U.S. 668 (1984). The outcome of the applicant's proceeding was prejudiced, and it is reasonably probable that the outcome would have been different had counsel's performance not been deficient. <u>Strickland</u>. 466 U.S. at 694. Defense counsel was ineffective based on one or more of the following:

1.    My defense attorney failed to conscientiously discharge his professional responsibilities while he was handling my case.

2.    My defense attorney failed to effectively challenge the arrest and seizure of Applicant.

3.    My defense attorney failed to act as my diligent conscientious advocate.

4.    My defense attorney failed to give me his complete loyalty.

5 .   My defense attorney did not have my best interest in mind while he was supposed to be investigating and preparing my case.

6.    My defense attorney failed to serve my cause in good faith.

7.    My defense attorney neglected the necessary investigations and the preparation of my case.

8.    My defense attorney dd not do the necessary factual investigations on my behalf.

9.    My defense attorney did not do the necessary legal research.

10.   My defense attorney did not conscientiously gather any information to protect my rights.

6

11.     My defense attorney did not try to have my case settled in a matter that would have been to my best advantage.

12.     My defense attorney did not advise me of all my rights or take any of the actions that were necessary to protect preserve them, knowing that I was not versed in the law.

13.     My defense attorney, knowing I was illiterate in the law, never properly ascertained whether or not I actually understood or comprehended all of the issues that were involved in my case.

14.     My defense attorney never properly consulted with me or kept me informed with what was going on as far as my case was concerned.

15.     My defense attorney never explained to me or discussed with me any of the elements of the crime charged.

16.     My defense attorney never made any attempt to ascertain whether or not I actually knew what the elements fo the crime charged were or whether or not I understood exactly what the term "criminal" element" actually meant.

17.     My defense attorney never explained to me or discussed with me how the elements of the crime charge  and the evidence that the prosecution planned to introduce into evidence against me related to one another and did not discuss how the sentencing would be done especially as it related to the elements of the crime as in State v. Boyd.

18.     My defense attorney never informed me of any of the defenses that were available to me.

19.    My defense attorney never intended to offer any defense to the court on my behalf.

20.    My defense attorney never explained to me or discussed with me any kind of defense strategy.

21.    My defense attorney never explained to me or discussed with me any of the tactical choices that they either made or were planning to make.

22.    My defense attorney dictated to me exactly how my case was going to be handled and offered no alternative options.

23.    My defense attorney failed to properly acquaint themselves with the law and the facts surrounding my case and as a direct result of their intentional negligence, there was a very serious error in their assessment of both the law and the facts.

24.    Because of my defense attorney's gross neglect and his many legal errors no defense at all was put in issue for me during the Court proceedings.

25.    My defense attorney did not subject the prosecution's case to any adversarial testing.

26.    My defense attorney failed to oppose the prosecution's case with any adversarial litigation.

27.    My defense attorney failed to function as the government's adversary in any sense of the word.

28.    My defense attorney failed to pursue any of the legal recourse that were available to him.

29. The attorney that represented me. on this charge in Court failed to function as the counsel that the Constitution's Sixth Amendment Guarantees.

30. My defense attorney failed to call alibi witnesses on my behalf which would have proven my innocence.

31. My defense attorney failed to appeal my case after I was convicted when I wanted to appeal.

[App. 314–15.]   A hearing was held on September 16, 2013, at which Petitioner was represented by Richey.  [App. 320–34.] On October 23, 2013, the PCR court filed an order granting belated appeal pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991),[5] and denying and dismissing Petitioner's second PCR application. [App. 338–42.]

---

[5]As the South Carolina Supreme Court has explained,

> This Court has allowed successive PCR applications where the applicant has been denied complete access to the appellate process. Under the PCR rules, an applicant is entitled to a full adjudication on the merits of the original petition, or "one bite at the apple." This "bite" includes an applicant's right to appeal the denial of a PCR application, and the right to assistance of counsel in that appeal.

> An *Austin* appeal is used when an applicant is prevented from seeking appellate review of a denial of his or her PCR application, such as when an attorney fails to seek timely review.

> * * *

> *Austin* appeals are considered "belated appeals" and are used to rectify unjust procedural defects, such as when an attorney does not file a timely appeal.

*Odom v. State*,  523 S.E.2d 753,  757 (S.C. 1999) (citations and footnote omitted).

A notice of appeal was timely filed. David Alexander ("Alexander") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a petition for writ of certiorari, dated June 18, 2014, in the Supreme Court of South Carolina asserting the following as the sole issue presented:

> Where Petitioner asked PCR counsel to file an appeal wrote PCR counsel asking for an appeal, yet PCR counsel failed to file an appeal, did the PCR court properly grant petitioner a belated appeal from his first PCR pursuant to Austin v. State?

[Doc. 14-14 at 3.] On the same day, Alexander filed on Petitioner's behalf a petition for writ of certiorari pursuant to *Austin v. State* in the Supreme Court of South Carolina raising the following issues:

> 1. Whether, in a child sex abuse case, trial counsel rendered ineffective assistance in failing to call petitioner's brother who testified at PCR that the child's family had a motive to fabricate the abuse allegations?
>
> 2. Whether trial counsel was ineffective in failing to ask for a speedy trial where a key witness for the defense died before trial from cancer?

[Doc. 14-15 at 3.] The Supreme Court of South Carolina granted the petition for writ of certiorari from the PCR court's second order and denied the petition for writ of certiorari from the PCR court's first order pursuant to *Austin*, 305 S.C. 453, 409 S.E.2d 395. [Doc. 14-17.] The Supreme Court of South Carolina remitted the matter to the lower court on February 2, 2015. [Doc. 14-18.]

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on April 30, 2015. [Doc. 1.] In his

Petition, Petitioner raises the following grounds for relief, quoted substantially verbatim[6]:

| | |
|---|---|
| **Ground One(a)**: | Ineffective Assistance of Trial Counsel |

*Supporting Facts*: Trial counsel failed to investigate defense claim of being set up by victim's family where there was evidence to support defense claim. There was a police report filed by Defendant 30 days befor[e] the victi[]m's family filed their report where Defendant was attacked by victim's mother and aunt. Also there was three (3) witnesses who heard victim's mother and aunt threaten Defendant with either prison or death because their mother was doing drugs with Defendant. Trial counsel never contacted the witnesses although Defendant supplied all contact info for witnesses to trial counsel.

| | |
|---|---|
| **Ground One(b)**: | Ineffective Assistance of Trial Counsel |

*Supporting Facts*: Trial counsel failed to advise Defendant that there was a possibility of the lesser included offense of assault and battery of a high and aggravated nature that could have been requested to be charged to the jury as there was no real evidence to support the higher offense. The medical exam found no evidence of sexual abuse, therefore, the lesser included offense would and should of been considered but because of trial counsel lack of preparation, the lesser included offense was never brought before the court.

| | |
|---|---|
| **Ground Two(a)**: | Speedy Trial Violation |

---

[6]Petitioner appears to continue the supporting facts for Grounds One and Two on an attached sheet; however, liberally construing the Petition, the Court will construe these as separate claims and refer to them as Grounds One(b) and Two(b).

*Supporting Facts*: Dec. 2004 Defendant was picked up for a Bench warrant for failure to appear, 8 months after making bond. Turned out Bench warrant was in error but Defendant spent 2 weeks in co. jail. During which time, Defendant lost his job. Judge at that time ordered State to prepare case against Defendant by December of 2004 or Judge was going to dismiss case against Defendant. The Bench warrant Bond hearing was held in October of 2004. Defendant submitted transcript from hearing to confirm Judges order. December came and went with no trial. It was two (2) years later when Defendant was tried. Two years after the Judges ruling.

**Ground Two(b)**: [Ineffective Assistance of Counsel]

*Supporting Facts*: Dec. 2004 Defendant was picked up for a Bench warrant for in Dec. of 2006, two years after the Defendant was su[p]posed to be tried as ordered by the Court, his trial attorney, public defender Gruber Sires admitted to the court of "dropping the ball on this case." Attorney Sires also admits that after the two years had passed, he thought that the case had been dismissed. It was at this point I felt the need to dismiss Mr. Sires and retain new counsel. Attorney Bruce Bryholdt was appointed as new counsel and given the information on the October 2004 Bench warrant bond hearing where the Judge invoked Defendant's speedy trial rights, yet Attorney Bryholt never followed up on the evidence. Had Attorney Bryholdt done even the minimalist of an investigation, he would have found all Barker factors, length of delay, reason for delay Defendant's assertion of right and prejudice was met to an [e]gre[gio]us lev[e]l that would of warranted a Judge to rule on.

**Ground Three**: Trial counsel failed to object to improper comments made by Prosecutor during closing arguments alluding to Defendant not testifying.

*Supporting Facts*: During closing argument pf Prosecutor, she made the comment "the defense has shown you

what I like to call a smoke and mirror act.  There
is a lot of smoke and bunch of mirrors designed
to get you away from what really matters here.["]
Victim was sole person to testify.  The statement
allud[e]s to Defendant not testifying.

**Ground Four**:          Subject Matter Jurisdiction

*Supporting Facts*:    After indictment no. 04-GS-37-509 was true
billed by the Grand Jury it was not, as due
process dictates, clock stamped and dated to the
Clerk of Court as to be placed on the Court
docket.  Prosecutor never notified defense of
intent to dismiss original indictment.  Prosecutor
dismissed original indictment on the pretense of
good faith in order to make way to reindict with
indictment that matched up with Prosecutor's
evidence.

[Doc. 1 (citations omitted).]

As stated, on August 15, 2015, Respondent filed a motion for summary judgment.

[Doc. 13.]  On October 23, 2015, Petitioner filed a response in opposition.  [Doc. 28.]

Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe

his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519,

520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon*

*v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less

stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under

this less stringent standard, however, the pro se petition still may be subject to summary

dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court

13

can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

14

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

16

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)    (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7] Further, strict time deadlines govern direct appeal and the filing

---

[7]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South Carolina is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the Supreme Court of South Carolina] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re*

_____

to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

22

## DISCUSSION

**Non-Cognizable Claim**

In Ground Four, Petitioner raises a claim that the trial court lacked subject matter jurisdiction because of an indictment issue.  [Doc. 1 at 10.]  However, federal habeas actions provide for review of solely federal law claims.  *See* 28 U.S.C. § 2254(a) (stating that a federal court will review only petitions alleging violations of federal law).  Subject matter jurisdiction of a state court is a state law issue not cognizable in this federal habeas action.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[i]t is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions.");  *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) (holding that jurisdiction is a matter of state law).  Therefore, Petitioner has not presented challenges to his convictions which are actionable under 28 U.S.C. § 2254 and Ground Four should be dismissed.

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondent contends Grounds One(a), One(b), Two(a), and Three are procedurally barred.  [Doc. 14 at 15–17.]  The Court agrees Grounds One(b), Two(a), and Three are procedurally barred.

### Ground One(a)

In Ground One(a) Petitioner contends that Byrholdt was ineffective for failing to investigate and call witnesses pertaining to Plaintiff's assertion that he was set up by the victim's family. This ground was raised to and ruled on by the PCR court in Petitioner's first PCR application and was raised to the Supreme Court of South Carolina in Petitioner's *Austin* brief. [App. 271, 278–80; Docs. 14-15 at 3, 5–11; 14-17.] Accordingly, this ground is preserved for habeas review, and the undersigned will address the merits of this claim.[8]

### Ground One(b)

In Ground One(b), Petitioner claims that Byrholdt was ineffective in failing to advise him of a lesser included offense. [Doc. 1 at 16.] This issue was raised to and ruled on by the first PCR court[9] [App. 271, 282–83]; however, Petitioner failed to raise it in his *Austin* brief [*see* Doc. 14-15]. Therefore, this ground was not fairly presented to the Supreme Court of South Carolina and is procedurally barred from federal habeas review unless Petitioner has demonstrated (1) cause for the procedural default and actual prejudice resulting from the alleged constitutional violation or (2) that a fundamental miscarriage of justice has occurred. *See Coleman*, 501 U.S. at 750 (stating that if an issue is not properly

---

[8]The Court recognizes that in Petitioner's *Austin* brief, this issue was raised with respect to only one witness [Doc. 14-15]; however, liberally construing Petitioner's claims and in light of his pro se status, the Court will address the entirety of Ground One(a).

[9]The Court notes that the first PCR court ruled on this issue as a claim that Byrholdt was ineffective for failing to request a jury instruction on the lesser included offense [App. 282–83] and here Petitioner styles this issue as a claim that Byrholdt was ineffective for failing to advise him on the lesser included offense [Doc. 1 at 16]. However, in his Petition, Petitioner also states that because trial counsel was not prepared, "the lesser included offense was never brought before the court." [Doc. 1 at 16.] Liberally construing Petitioner's allegations, the Court finds that substantially the same claim was ruled on by the first PCR court.

raised to the state's highest court and would be procedurally impossible to raise not, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Ground Two(a)

In Ground Two(a), Petitioner alleges that he was denied access to a speedy trial. [Doc. 1 at 7.]  This claim was not ruled upon by the first PCR court and was not raised in Petitioner's *Austin* brief.  [*See* App. 270–85; Doc. 14-15.]   Accordingly, this ground is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Ground Three

In Ground Three, Petitioner asserts that Byrholdt erred in failing to object to improper comments made by the solicitor in her closing argument.  [Doc. 1 at 8.]  This claim was raised to and ruled upon by the first PCR court [App. 271, 281–82]; however, Petitioner failed to raise this issue in his *Austin* brief [*see* Doc. 14-15].  Because this ground was not fairly presented to the Supreme Court of South Carolina, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722; *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Cause and Prejudice

Petitioner does not allege that he can establish cause and prejudice with respect to any of his defaulted grounds or that he is actually innocent.  *See Kornahrens*, 66 F.3d at 1363 (holding that when a petitioner does not raise cause and prejudice, the court need not

25

consider the defaulted claim).  Accordingly, Respondent's motion for summary judgment should be granted as to Grounds One(b), Two(a), and Three.

**Merits of Remaining Claims**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2).  The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief.  *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S.Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that

26

those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### Ground One(a)

In Ground One(a), Petitioner argues Byrholdt was ineffective in failing to investigate the claim that Petitioner was set up and in failing to contact witnesses that would support this claim. [Doc. 1 at 5.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based upon this allegation.

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard."[10] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and

---

[10]In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional

latitude that are not in operation when the case involves review under the Strickland standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court addressed Byrholdt's performance under the standard set forth in *Strickland*. [App. 275–76.] The PCR court found

> that Applicant's allegation that counsel was ineffective for failing to investigate whether Applicant was set-up is without merit. Applicant alleges that counsel failed to interview Sarah C., Tim Crittendon, and Tiffany Burch. Applicant also alleges that counsel failed to present the testimony of these three witnesses at trial. Applicant presented the testimony of Tim Crittendon at the PCR hearing and Mr. Crittendon's testimony concerned an incident that took place prior to the incident(s) for which Applicant was found guilty of at trial. Counsel testified that Tim Crittendon's testimony would not have been helpful at Applicant's trial. To establish counsel was inadequately

_____

errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

prepared, an Applicant must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998). The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). When claims of ineffective assistance of counsel are based on lack of preparation time, an Applicant challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare. United State v. Cronic, 466 U.S. 648 (1984); U.S. v. LaRouche, 896 F.2d 815 (4th Cir. 1990). This Court finds the Applicant offered no evidence at the PCR hearing that counsel could have found that would have been likely to have any outcome more favorable to the Applicant. The Applicant did not produce any witnesses or offer any other evidence from which this Court could conclude that the outcome of the case would likely have been different, had the evidence been developed. Tim Crittendon's testimony does not provide any support to Applicant's assertion that he was set-up.

Furthermore, prejudice from counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify as post conviction relief hearing. Underwood v. State, 309 S.C. 560, 425 S.E.2d 20 (1992); Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991). The Applicant's mere speculation as to what a witness' testimony would have been cannot, by itself, satisfy his burden of showing prejudice. Clark v. State, 315 S.C. 385, 434 S.E.2d 266 (1993); Glover v. State, 318 S.C. 496, 458 S.E.2d 528 (1995). The Applicant must produce some testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witnesses' failure to testify at trial. Bannister v. State, 333 S.C. 298, 509 S.E.2d 807 (1998). Counsel testified that he tried to contact Tiffany Burch, but that she did not want to cooperate to get involved. Sarah C., Applicant's wife at the time of the incident, passed away prior to Applicant's trial, however counsel testified that he was able to bring out the issue that Applicant wanted Sarah C. to testify to at trial. While Applicant presented Tim Crittendon's testimony at the PCR hearing, this Court finds that the testimony would have provided nothing more for the defense. Tiffany Burch was not presented for testimony at the PCR hearing by Applicant. This Court finds

that Applicant has failed to show counsel's performance was
deficient, and that the Applicant was prejudiced by counsel's
alleged deficiency.  Therefore, this Court finds that these
allegations are denied and dismissed.

[*Id.* at 278–80.]  The PCR court's denial of Petitioner's ineffective assistance claim was

neither contrary to nor an unreasonable application of applicable Supreme Court precedent.

First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court

precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts

that were materially indistinguishable from those considered in a decision of the Supreme

Court but arrived at a result different from the Supreme Court precedent.  The PCR court

concluded that Petitioner failed to establish that Byrholdt's representation fell below an

objectively reasonable standard or any resulting prejudice.  [App. 279–80.]

The record supports the PCR court's determination.  At the PCR hearing, Petitioner

stated that he and counsel had determined that he would not testify; however, Petitioner

contended that he had given Byrholdt the names and contact information of three people

who were present for an incident Petitioner believed would prove that he was set up.  [App.

216–17.]  Byrholdt testified that he tried to contact Tiffany Birch[11] ("Birch"); however, she

refused to speak to him and "would not cooperate in any way whatsoever."  [App. 231.]

Byrholdt stated that he believed her testimony may have been important and subpoenaed

her but she would not participate.  [App. 234.]  To the extent that Petitioner alleges Byrholdt

was ineffective in failing to investigate the statements of Sarah Crittendon ("Sarah C."),

Petitioner has failed to show the PCR court's decision was contrary to or an unreasonable

---

[11]The PCR court refers to this person as Tiffany Burch throughout the order of
dismissal.  [App. 270–285.]

application of Supreme Court precedent.[12]  At the hearing, Petitioner stated that he did not

know that Sarah C.'s testimony would be useful until after the trial had started.  [App. 218.]

The record also shows that, in his closing argument, Byrholdt was able to bring up the fact

that it was alleged that Sarah C. was in bed with Petitioner during one of the incidents with

the minor child, which was one fact Petitioner asserted Sarah C. could testify about.  [App.

143–45.]  Further, with respect to any favorable testimony Petitioner argued Birch or Sarah

C. would have provided if Byrholdt had investigated, Petitioner failed to have either of them

testify at the PCR hearing.  *See Bassette v. Thompson*, 915 F.2d 932, 940 (4th Cir. 1990)

("The great failing of the appellant on his claim that other evidence should have been

presented during the sentencing phase of his trial is the absence of a proffer of testimony

from a witness or witnesses he claims his attorney should have called.").

Tim Crittendon ("Tim C."), Petitioner's brother, appeared and testified at the PCR

hearing.  [App. 226–29.]  He stated that he had heard Petitioner's step-daughters confront

Petitioner and one of them said that Petitioner "had thirty days to leave [their mother].  If

you don't leave in thirty days, then you ain't gonna like what I'm gonna do."  [App. 227.]

Tim C. clarified that one of the step-daughters is the mother of the victim in Petitioner's

criminal case.  [App. 228.]   At the PCR hearing, Byrholdt testified that at the time of

---

[12]Petitioner stated that he wanted Sarah Hill ("Hill") to testify; however, Hill died
before Petitioner went to trial.  [App. 218.]  Petitioner testified that she died in January 2006
[App. 213], and Byrholdt was not assigned to his case until June or July of 2006 [App 208,
230].   Accordingly, Byrholdt cannot be found ineffective for failure to investigate Hill's
knowledge of these events when she died before he was assigned to the case.  The Court
notes that at the PCR hearing, Petitioner stated that he replaced Hill on the witness list with
his wife, Sarah Crittendon.  [App. 218., 233.]   In its order of dismissal, the PCR court
appears to confuse Hill and Sarah C. [App. 278–80], but that error is not a dispositive in this
case.

Petitioner's trial, Tim C. was incarcerated "with a prior, pretty good record" that Byrholdt believed might limit his credibility as a witness. [App. 231.] Further, Byrholdt testified that he and Petitioner had discussed whether Petitioner had been set up; however, Byrholdt did not believe focusing on a set up was a sound trial strategy in light of the ten-year-old victim's testimony at trial. [App. 236.]

Thus, the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of trial counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal citation omitted)). The PCR court's determination that Petitioner failed to show that counsel's performance was deficient or that Petitioner was prejudiced was neither contrary to nor an unreasonable application of Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

### Ground Two(b)

In Ground Two(b), Petitioner claims Byrholdt was ineffective in failing to raise the speedy trial issue. [Doc. 1 at 16] The Court concludes Petitioner is not entitled to federal habeas corpus relief based upon this allegation.

As previously stated, the PCR court addressed Byrholdt's performance under the standard set forth in *Strickland*. [App. 275–76.] With respect to Ground Two(b), the PCR court found,

> Applicant's allegation that trial counsel was ineffective for failing to investigate Applicant's claim that there was a violation of the Speedy Trial Act is without merit. Counsel testified and the record reflects that counsel was appointed to represent Applicant in July 2006 and that Applicant's case went to trial in December 2006. Counsel testified that he did not find a speedy trial issue in his review of the Applicant's case and that Applicant's right to a speedy trial was never invoked. The Applicant asserts that on October 29, 2004, his right to a speedy trial was invoked. Specifically, Applicant points to the following statement made by the judge, "When do you think you all will be able to dispose of the case?" The state replied that they would attempt to have the case heard during the December 2004 term of court. This Court finds that there was no violation of the speedy trial act. Applicant's trial took place four (4) months after counsel was appointed.
>
> To establish counsel was inadequately prepared, an Applicant must present evidence of what counsel could have discovered or what other defenses could have been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998). The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). When claims of ineffective assistance of counsel are based on lack of preparation time, an Applicant challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare. United State v. Cronic, 466 U.S. 648 (1984); U.S. v. LaRouche, 896 F.2d 815 (4th Cir. 1990). Here, the Applicant could not point to any specific matters regarding the speedy trial act that counsel failed to discover which would

have resulted in a different outcome for Applicant. This Court finds that Applicant offered no evidence at the PCR hearing that counsel could have found that would have been likely to have any outcome more favorable to the Applicant. The Applicant did not produce any witnesses or offer any other evidence from which this Court could conclude that the outcome of the case would likely have been different, had that evidence been developed.

Furthermore, a reviewing court should consider four factors when determining whether a defendant has been deprived of his or her right to a speedy trial: 1) length of the delay; 2) reason for the delay; 3) defendant's assertion of the right; and 4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); see also *State v. Brazell*, 325 S.C. 65, 75, 480 S.E.2d 64, 70 (1997). These four factors are related and must be considered together with any other relevant circumstances. *Barker*, 407 U.S. at 533, 92 S.Ct. 2182. "Accordingly, the determination that a defendant has been deprived of this right is not based on the passage of a specific period of time, but instead is analyzed in terms of the circumstances of each case, balancing the conduct of the prosecution and the defense." *Pittman*, 373 S.C. at 549, 647 S.E.2d at 155. Therefore, this Court finds that there has been no neglectful delay prejudicial to Applicant to any great degree other than the fact in and of itself there had been a delay. This allegation is denied and dismissed.

[App. 276–78.] The record supports the PCR court's determination. Petitioner was originally arrested on these charges on January 9, 2004, and released on bond. [App. 186–88.] At the time, his attorney was Gruber Sires ("Sires").[13] [App. 207.] He was arrested again in October 2004 on a bench warrant; at the bond hearing, the judge asked the State when they would be able to dispose of this case and the solicitor responded that

---

[13]The Court notes that this issue was also brought with respect to Sires in Petitioner's *Austin* brief [Doc. 14-15], but in his Petition, Petitioner appears to bring this claim against only Byrholdt [Doc. 1 at 16]. To the extent that Petitioner intends to assert this claim against Sires, the Court finds the PCR court's holding that Petitioner fails to establish a constitutional violation, as explained in footnote 14, *infra*, is also applicable to any claim of ineffective assistance of counsel against Sires.

34

they thought they could schedule it for December 2004.[14]  [App. 186–87.]  Petitioner was

released on bond.  [App. 187.]  In 2006, Petitioner was again arrested on a bench warrant,

requested another attorney, and two weeks later was appointed or retained Bryholdt as

counsel.  [App. 208–09.]  Petitioner's case was tried four months after Bryholdt took over

his case.  [App. 232.]  Bryholdt testified at the PCR hearing that he and Petitioner had

discussed the speedy trial issue briefly; however, he did not believe that a speedy trial

motion would lead to dismissal of the case particularly in light of the fact that the case had

been reindicted.[15]  [App. 232.]  Thus, the PCR court's decision was not contrary to or an

---

[14]As Byrholdt pointed out at the PCR hearing, this does not appear to be an invocation of Petitioner's speedy trial rights and there is no evidence, beyond Petitioner's conclusory statements, that the judge stated or insinuated that Petitioner's case would be dismissed if it was not tried in December 2004.  [App. 232, 186–88; *see Ross*, 759 F.2d at 365 (holding that conclusory allegations, without more, are insufficient to preclude granting the summary judgment motion).]

[15]Speedy trial violations are to be evaluated under a balancing test set forth by the Supreme Court in *Barker v. Wingo*, under which courts are to consider "the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. 514, 530 (1972).  The length of delay acts as a "triggering mechanism" such that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Id.*  Because this issue was not presented to the trial court, there is no clear discussion to review regarding the *Barker* factors.  However, there is some evidence in the record for the Court to consider.  With respect to the length of delay, it is clear that Petitioner was arrested in January 2004 and tried in December 2006.  [App. 1, 207.]  Here, the length of delay was "uncommonly long," which courts typically find is triggered as the delay approaches one year.  *United States v. Thomas*, 55 F.3d 144, 149 (4th Cir. 1995).  Therefore, Petitioner meets the threshold requirement of a speedy trial violation, and the Court will proceed to consider the remaining elements.  There is no evidence in the record that explains the reason for the delay; at the PCR hearing, Petitioner stated that when asked about it, Sires said that he had assumed that the case "no longer existed" [App. 209], but there is nothing that indicates why the State failed to act on the case.  Regarding Petitioner's assertion of the right, Petitioner and Byrholdt agree that they discussed the issue after Byrholdt took over the case in 2006, and neither contends that Petitioner insisted on making a motion or otherwise meaningfully asserted this right; the PCR court stated that Petitioner believed this right was asserted by the judge at his bond hearing.  [App. 232, 277.]  With respect to

unreasonable application of applicable Supreme Court precedent.  *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal citation omitted)).  Byrholdt was able to articulate a valid reason for failing to allege a speedy trial violation and was able to try this case within four months of accepting the case.  This court cannot conclude that the state court incorrectly or unreasonably applied Supreme Court precedent; thus, Petitioner is not entitled to habeas corpus relief on this ground.

---

whether he was prejudiced by the delay, Petitioner argues he was prejudiced because Hill, one of his witnesses, died in the time between his arrest and when he went to trial.  [App. 225.]  However, as discussed by the PCR court, Petitioner stated that he had two other witnesses that were present at the same incident and could testify to same facts about which Hill would have testified.  [App. 213.]  Further, Petitioner has provided no evidence that Hill's testimony would have been beneficial to him.  *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) (holding that "[w]here the only evidence of a missing witness's testimony is from the defendant, this Court views claims of ineffective assistance with great caution").  Accordingly, the Court cannot determine that the PCR court's evaluation of the factors was erroneous.  Thus, the state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law, and it was not based upon an unreasonable determination of facts in light of the state court record.

36

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petitioner be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 19, 2016
Greenville, South Carolina